286 P.2d 249

**NATIONAL FARMERS UNION PROPERTY AND CASUALTY CO., a corporation, Plaintiff and Appellant,**

**v.**

**Leland J. THOMPSON, Defendant and Respondent.**

**No. 8286.**

Supreme Court of Utah.

July 12, 1955.

---

3. United States v. Cumberland Public Service Co., 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251.

Stewart, Cannon & Hanson, Salt Lake City, for appellant.

Paul Thatcher, Ogden, for respondent.

CROCKETT, Justice.

Plaintiff Farmers Insurance Company sued to recover $2,000 it had paid Leland J. Thompson for loss by fire of a frame building used to store farm machinery; Mr. Thompson counterclaimed for $4,000 additional for machinery also damaged by the fire. The issues of fact were submitted to a jury on special interrogatories, all of which were answered favorably to the defendant Thompson and judgment was entered thereon.

The first matter of concern is one of procedure. The trial judge, on his own initiative and without notice to the parties, entered a conditional order: that a new trial be granted unless the defendant, within ten days, filed his consent to reduce the amount of $2,000 allowed for the frame building to $1,000, which the judge recited was the actual value of the building as found by him.

Thompson failed to file a consent to so reduce the judgment within the ten days, but just before 5 p. m. on the 10th day filed a motion to amend the court's finding of $1,000 as to the value of the building to $2,000, as found by the jury, and to set aside the conditional order; at the same time of this filing the clerk filed an order granting the new trial in accordance with instructions previously given him by Judge Jones to file it if the consent to reduce the judgment did not come in. This motion was called up for hearing, and after arguments and filing of briefs, some five months later, the court entered its order "vacating order for a new trial and reinstating judgment" restoring the original jury finding of $2,000 as the value of the building.

The plaintiff Farmers Insurance challenges this action as improper, insisting that after the trial court made its order conditionally granting a new trial it was functus officio with respect to the cause and

had no further authority to vacate such order. It reasons that since the court would not have had jurisdiction, on its own initiative in the absence of a motion, to enter an order granting a new trial after ten days from the entry of judgment,[1] it likewise could not modify or set aside an order for a new trial made within the ten day period even though a motion to vacate was also filed within ten days. Defendant's position is not well taken. It must be kept clearly in mind that there is a significant difference between a trial court's attempt to enter an order affecting a judgment after the lapse of ten days where no motion has been filed, and his action thereon where a timely motion has been interposed, as was the case here.

■■ Plaintiff refers to Luke v. Coleman[2] wherein this court held that an order *denying* a new trial is final in character and operates to terminate the trial court's jurisdiction for the reason that once the trial judge had made his decision no further modifications can be made. This is based upon the principle, which we recognize as sound, that there must be some point where litigation terminates and if the losing party is so aggrieved that he feels impelled to seek further redress it must be to the appellate court. Indeed, if a judge were allowed to change his decision and in effect reverse himself, tenacious litigants and lawyers might persist in arguments and pressures which would be both interminable and intolerable. We recognize some merit, however, in defendant's argument that an order *granting* a new trial is different in character than an order *denying* one. The latter terminates the cause, while the former operates to vacate the judgment and reinstate the case as one undisposed of before the court, over which it retains jurisdiction.[3]

■ Focusing attention directly on the trial court's action in first changing, then restoring, the jury's finding as to the value of the building: most of us have need to reflect, all too often, that "hindsight" is not only more accurate than foresight, but we have a lot more of it. It now seems clear enough that it would have been wiser for the trial judge to have notified the parties of his intention, given them an opportunity to present their arguments and then made his decision as to whether the judgment should be as found by the jury, or modified as he apparently first thought it should be.

---

1. Rule 59(d) U.R.C.P., Rule 6(b) U.R. C.P. See Barron and Holtzoff, Federal Practice and Procedure, Vol. 3, page 241.

2. 38 Utah 383, 113 P. 1023.

3. DeLuca v. Boston Elevated Railway Company, 312 Mass. 495, 45 N.E.2d 463, and Farmers & Merchants National Bank of El Dorado v. Wright, 98 Kan. 248, 157 P. 1178. See Bateman v. Donovan, 131 F.2d 759, where the Ninth Circuit Court of Appeals approved the modification of an order *granting* a new trial some 45 days after it was granted.

Fortunately for the benefit of "hind-sight," our Rules of Civil Procedure allow some latitude for correction of such sua sponte actions by the court by making specific provision for their reconsideration by him. Rule 7(b), insofar as applicable here, provides:

"* * * any order made without notice to the adverse party may be vacated or modified without notice by the judge who made it, or may be vacated or modified on notice."

Since the defendant filed a motion to set aside the conditional order within ten days, and thus before it was to take effect, it never became operative. The effect of this was to hold it in abeyance until the court had an opportunity to pass upon the motion. And Rule 7(b) just referred to confers express authority upon the judge to set aside the order he had made.

The other aspect of the defendant's motion which the trial court granted, that of amending the judgment back to conform to the original finding of the jury, finds support in Rule 52(b), U.R.C.P., which reads in part: "Upon motion of a party made not later than 10 days after the entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly." Such motion was also timely filed under this rule and arrested the running of time until the trial court acted upon it.

We are not here concerned with what the situation would be if the motion had been filed after the ten days had elapsed, nor whether the court could vacate an order granting a new trial if the original motion for a new trial had been properly noticed and heard.

Turning from the procedural aspects of the case to the merits: the Farmers Insurance Co. insists that the evidence does not support the finding of the jury that Mr. Thompson had an insurable interest in the building because it had been sold by him before the fire.

The parties and this court are all in accord as to the soundness of the rule that one who has no interest in property cannot insure it. This is generally accepted and is enacted into statute in this state. Section 31–19–4, U.C.A.1953, provides:

"(1) No contract of insurance * * * shall be enforceable except for the benefit of persons having an insurable interest in the things insured.

"(2) 'Insurable interest' as used in this section means any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage."

The pertinent inquiry here is what the term "substantial economic interest" as used in the foregoing statute means. We agree that such an interest would not exist if

it were based solely upon an agreement that an owner (such as Hardy) would permit another (such as Thompson) to insure the owner's (Hardy's) property for the benefit of the latter (Thompson) unless the latter had some interest in the property other than the right to recover if it were destroyed by fire. Such an agreement would permit one having no interest in the property except a potential gain from its destruction to gamble upon its loss and would be against public policy.[4] It is unquestionably true that the party insuring must have some interest beyond this. But if he has an interest of any character in the property so that he will or may derive some pecuniary benefit from the continued existence of the property or suffer pecuniary loss from its destruction by fire,[5] he may properly be said to meet the statutory requirement of having a "substantial economic interest." If this test is met, that suffices, and the nature of his interest or the status of title or possession is immaterial.[6]

■ The facts which bear upon the question whether Thompson had an insurable interest in the building are these: He had been carrying insurance on it with plaintiff before he sold his farm, and this building, to Mr. John M. Hardy. In connection with this sale Hardy agreed that Thompson should retain possession and use of the building to store his machinery. The jury expressly found that Thompson had "sold but not conveyed" the building to Hardy. There was testimony that the defendant advised the insurance company of this fact by letter and that the company accepted a renewal premium contained in that letter and mailed the receipt back to Thompson. In answer to another question the jury found that this sale was "not unknown" to the plaintiff Farmers Insurance. It is undisputed that Thompson did retain possession of the building, that his machinery was stored therein and that he had never turned the keys over to Mr. Hardy.

Defendant's evidence was in substance that Mr. Thompson had obligated himself to be "responsible" to Mr. Hardy for the building during the time he retained possession and used it; that he expected to make it good and Hardy expected to be paid for it. Having assumed such obligations, Thompson had a right as well as a duty to protect the building and stood to benefit by its continued existence or to lose if it burned, upon the basis of these facts the finding that Thompson had an insurable interest in the building can be sustained under the test above set out.

■■ Another controversy here is the Farmers Insurance Company's argument

4. See Price v. United Pacific Casualty Ins. Co., 153 Or. 259, 56 P.2d 116.

5. 44 C.J.S., Insurance, § 180 and cases cited in footnote 57 at page 877. See

4 Appleman: Insurance Law and Practice, Section 2123.

6. 44 C.J.S., Insurance, § 180.

that it is indisputable that the building was only worth $1,000; that therefore the trial judge was correct in ordering that the $2,000 value be reduced to $1,000 and that he committed error in vacating such order. In explanation of his later action the judge stated, "the court did not have in mind the fact that the parties, by their pleadings, had stipulated to the value of said structure." The plaintiff's complaint alleged the value of the building to be $2,000 which the defendant admitted by answer and the plaintiff again so alleged in its reply to the defendant's counterclaim. The issue of its value was never raised at the trial. However, in connection with the dispute over insurable interest, defendant testified that he had a financial interest in the building in that he was to receive $1,000 additional if the building was included in the deal. That was the only evidence bearing upon the question of value.

Plaintiff urges that inasmuch as the evidence of value just referred to was voluntarily introduced by defendant, the court could pass on the issue, citing Rule 15(b) to the effect that, though an issue is not raised by the pleadings, liberal amendments should be allowed "even after judgment"; and further that the judge could modify the judgment as he did, under the authority of Rule 54(c): "* * * every final judgment shall grant the relief to which a party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

Notwithstanding all of our efforts to eliminate technicalities and liberalize procedure, we must not lose sight of the cardinal principle that under our system of justice, if an issue is to be tried and a party's rights concluded with respect thereto, he must have notice thereof and an opportunity to meet it.[7] This is recognized in Rule 15(b) which recites that such liberal amendments shall be allowed if the issue is tried "by express or implied consent of the parties." It does not appear that there was any such consent to try the issue of the value of this building. Defendant now urges that had the matter been in dispute, he could have adduced evidence that this was a forced sale and other proof supporting his claim of value. The plaintiff had an opportunity to raise this issue, but instead of doing so, pleaded its value as $2,000, which was agreed to by the defendant. As the matter was presented, and under the findings of the jury as made, we are of the opinion that there was no impropriety in the trial court correcting his original order by restoring the value to $2,000 as pleaded by the parties and as found by the jury.

The plaintiff's final contention is that the insurance policy was void by reason of misrepresentation made by the defendant in applying therefor. It is sufficient to note

7. See Taylor v. E. M. Royle Corp., 1 Utah 2d 175, 264 P.2d 279; Morris v. Russell, Utah, 236 P.2d 451, 26 A.L.R.2d 947.

that upon disputed evidence the jury found that no such misrepresentation was made.

Affirmed. Costs to defendant.

McDONOUGH, C. J., and HENRIOD, WADE and WORTHEN, JJ., concur.