**LEGER CONSTRUCTION, INC.,** a corporation, Plaintiff and Appellant,

v.

**ROBERTS, INC.,** Defendant and Respondent,

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY,** a corporation, Added Defendant.

No. 13737.

Supreme Court of Utah.

May 21, 1976.

John L. McCoy, of Ryberg, McCoy & Halgren, Salt Lake City, for plaintiff and appellant.

Roe & Fowler, Salt Lake City, for defendant and respondent.

HENRIOD, Chief Justice:

Appeal from a judgment on Roberts' counterclaim, as subcontractor, under an agreement with Leger. The latter was the prime contractor on two public maintenance station jobs. Affirmed in part and reversed in part. No costs awarded.

Leger obtained a bond from defendant U.S.F. & G., running in favor of himself, laborers and materialmen. The contract with Roberts having to do with the plumbing was to be completed by November 30, 1971. There was a clause in the contract providing for a $50-a-day liquidated damage payment for each day thereafter that the construction remained incomplete. Also there was a provision that an extension of time could be granted if Roberts asked for it and if Leger, believing there were circumstances or unforeseeable causes beyond Roberts' control and without fault or negligence on Roberts' part, which circumstances included acts of the owner, other contractors, and adverse weather conditions. The court found there were such circumstances. However, Roberts neglected to ask for such extension.

The court also found the following: That Leger testified he was suing only for delay in laying radiant heating pads, claiming Roberts was slow in starting; also that the pads were installed by

October 14, 1971, and the concrete floors poured by the end of October, when bad weather halted construction throughout November; that leaks were found in the system because of faulty valves furnished according to specifications (which Roberts had to follow); that such valves were in the walls, that were Leger's responsibility, and which he put up, difficult to reach and repair, taking until December 5, 1971 to accomplish, and pouring of concrete was delayed until December 29; that Leger had a work time exhibit that he claimed reflected the work was not diligently pursued, which was countered by Roberts' data to the contrary; that the time factor was no greater than a third similar job with which Roberts had nothing to do; that Leger claimed that the *sole* basis for his damages was delay in installing the radiant heat pads;[1] that there was no delay in installing the pads; that there was not a preponderance of the evidence that failure to complete the work on time "was due to the fault or negligence of defendant";[2] that the walls and roof,—Leger's responsibility,—could not have been completed by the deadline; that numerous other problems were encountered after the deadline which were not the responsibility of Roberts and over which he had no control.

Leger assigns ten points on appeal, most of which are simply by virtue of an interpretation of the evidence antithetically to that of the trial court, to which interpretation we cannot subscribe, since we think there is sufficient refutation of Leger's contention, that if believed by the trial court, supports such findings.

Leger says that the only way that Roberts could get an extension of time was to ask for it in writing, when it "shall be granted, when it is, *in the judgment of (Leger),* not practical or impossible or because of unforeseeable causes beyond control and without fault or negligence on (Roberts') behalf, to complete said work in the specified time (above causes including but not restricted to strikes, war, *acts of God, . . . acts of another contractor . . .* and adverse weather conditions.") The facts that Leger failed to pay the balance on the contract, and filed this suit, and alleged in his complaint that Roberts failed to comply with the contract, "despite [Leger's] repeated demands" upon him to do so, make it obvious that if Roberts had asked for an extension, it would have been an idle gesture and was unnecessary under the principle that the law will not require one to do a useless or impossible thing.

As to Leger's objection that evidence that another similar job was equally delayed, was inadmissible, in many cases, this well might be true. Leger cites no authority to support this point on appeal, however. The matter of admissibility largely depends on identicalness, similarity, or, on the other hand, a stranger thereto,—governable largely by the sound discretion of the trial court. The two jobs on which Roberts was employed at Salt Lake City and Manila, Utah, were about the same kind of construction and plumbing, as was a third job at Lehi, Utah, that went to another subcontractor,—all three jobs having been put out to bid about the same time. We see no error in the trial court having admitted the evidence, particularly since one of Leger's witnesses who appeared to be an expert, opened the matter up and

---

1. Which finding Leger objected to, and which may have been somewhat inaccurate as reflected in the record, but appears to have been a factor of substantial urgence by Leger as to the nature and extent of claimed damages, but at the same time not such as would call for reversal.

2. To which finding Leger objected on the ground that this being a contract, fault or negligence of him who breaches it is not tenable as a defense (Williston, Contracts 3d Ed. 2, Sec. 1290). Such finding may be inarticulate but certainly failure to comply with its terms is the latter's fault and may be negligence, and the objection, in our opinion, is one of semantics.

made it a legitimate target for cross-examination.

The record is so diffused with evidence of different complexion that we are constrained to believe and hold that there are sufficient facts reflected therein, that if believed, supported the findings, and this being so, under the rules on appeal we affirm the judgment,[3]—except that for attorney's fees, which is another matter.

As to the award of attorney's fees, that part of the judgment is reversed. In the original judgment no attorney's fees were awarded. They were awarded on motion to amend. There was nothing in the contract that mentioned entitlement to attorney's fees in case of suit by either party, and it is obvious that the parties did not intend or expect that either would be entitled thereto in the event either filed suit thereon. We have said more than once that a litigant cannot pray for attorney's fees unless they are provided for in a contract,[4] or by statute. We think that in the latter case, one entitled, in fairness, should make his claim known in his pleadings. That was not done in this case and no one has claimed or cited any authority here that he must or must not do so. Albeit we say in fairness this should be done we need not and do not decide that point. We think, however, that because of the circumstances and nature of this case, and the factual contradictions that conceivably could have resulted in a different conclusion, the defendant, who did not sue in the first instance for the balance he claimed was due him, but counterclaimed therefor, should be held to a precise accountability to the wording of the statute which almost obviously he employed as an afterthought, since he did not rely on the statute in his pleadings before the original judgment was

entered, didn't call the court's attention to it until after the judgment was entered, and only did so for the first time just one day before his time for filing a motion to amend expired, whence he made claim under the statute. Withal that, the award for attorney's fees must be reversed on a perhaps more substantial and specific basis.

Rule 54(d)(2), Utah Rules of Civil Procedure with respect to "Costs," provides that one claiming them *must,* "within five days" after judgment, serve the other party and file with the court a *verified* memorandum of items. Roberts did not include any attorney's fees in his cost bill within the five-day prescribed period,—and could not have done so because the original judgment awarded none. He sought the fees nine days after the judgment and four days after the required cost bill filing date. The attorney's fees were incorporated *in the judgment* and that is the present state of the record. The judgment cannot be amended again on motion because it is too late. As a matter of fact the judgment for attorney's fees is invalid since there was nothing in the contract providing for such an award.

The only basis upon which Roberts could have been awarded the fees under the statute was to invoke it and to invoke it, it would have to be on the basis of expense of litigation,—or "costs,"—and not as an outgrowth of a written contract.

The statute involved is Title 14-1-8, Utah Code Annotated 1953, which clearly reads as follows:

> *Attorney's fees allowed.*—In any action brought upon either of the bonds provided herein, or against the public body failing to obtain the delivery of the payment bond, the *prevailing party,* upon each separate cause of action, shall re-

3. *Nokes v. Continental M. & M. Co.,* 6 Utah 2d 177, 308 P.2d 954 (1957) ; *Hardy v. Hendrickson,* 27 Utah 2d 251, 495 P.2d 28 (1972) ; *Staples v. Weyher,* 26 Utah 2d 387, 490 P.2d 330 (1971) ; *Lynch v. MacDonald,* 12 Utah 2d 427, 367 P.2d 464 (1962).

4. *Holland v. Brown,* 15 Utah 2d 422, 394 P.2d 77 (1964) ; *Horman v. Lloyd,* 28 Utah 2d 112, 499 P.2d 124 (1972) ; *Hawkins v. Perry,* 123 Utah 16, 253 P.2d 372 (1953).

cover a reasonable attorney's fee to be *taxed as costs.*[5]

The judgment for costs is quite inconsistent with the terms of the contract and completely in derogation of the statute. The case is remanded with instructions to vacate the award for attorney's fees. Other matters raised on appeal need no treatment, being moot, in the light of what we say here.

ELLETT, CROCKETT, TUCKETT and MAUGHAN, JJ., concur.

---

5. *Openshaw v. Openshaw*, 80 Utah 9, 12 P. 2d 364 (1932): "A litigant claiming his costs and to whom the trial court has awarded costs, in order to recover the same from the adverse party, must file his cost bill within the time prescribed by the statute. *Houghton et al. v. Barton*, 49 Utah 611, 165 P. 471 (1917); *Checketts v. Collings* (Utah), 1 P.2d 950, 75 A.L.R. 1393."